UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ABDELAZIZ HAMZE,

        Plaintiff,

v.

                                      Case No. 3:21-cv-565-MMH-JBT

WILLIAM MIKEL WARNER, et al.,

        Defendants.

_____

## ORDER

### I. Status

Plaintiff Abdelaziz Hamze, an inmate in the custody of the Florida Department of Corrections (FDOC), initiated this action on May 20, 2021,[1] by filing a pro se Complaint for Violation of Civil Rights (Complaint; Doc. 1)[2] pursuant to 42 U.S.C. § 1983. Hamze is proceeding on an Amended Complaint (AC; Doc. 80) with a supplement (Doc. 83). In the AC, Hamze names as Defendants: (1) Sergeant Charles Orrin Nosbisch; (2) Sergeant William Mikel Warner; (3) Sergeant Robert Allan Brown; (4) Nurse R. Singletary; (5) Lieutenant William Hall; (6) Nurse Katherine Dee Burgin; and (7) Warden

_____

[1] See Houston v. Lack, 487 U.S. 266, 276 (1988) (mailbox rule).

[2] For all pleadings and documents filed in this case, the Court cites to the document and page numbers as assigned by the Court's Electronic Case Filing System.

Barry V. Reddish. AC at 2–4. He alleges that Defendants physically assaulted him in violation of the Eighth Amendment. See id. at 3, 6–9. He requests monetary damages, as well as declaratory and injunctive relief. Id. at 6.

This matter is before the Court on Sergeants Warner, Brown, and Nosbisch's Motion to Dismiss (Doc. 84)[3] with exhibits (Docs. 84-1 through 84-4), as well as Hamze's Motion for Evidentiary Hearing (Doc. 102) and Motion for Leave to Reply (Doc. 115). Hamze filed a response in opposition to Sergeants Warner, Brown, and Nosbisch's (collectively Defendants) Motion. See Plaintiff's Response to Motion to Dismiss (Doc. 88). And, Defendants responded to Hamze's Motions. See Defendants' Response to Plaintiff's Motion for Evidentiary Hearing (Doc. 103); Defendants' Response to Plaintiff's Motion for Leave to Reply (Doc. 116). Thus, the Motions are ripe for review.

---

[3] Sergeants Warner and Brown filed the Motion before Hamze served Sergeant Nosbisch. Sergeant Nosbisch later notified the Court that he joined the Motion. See Notice of Adoption (Doc. 111).

## II. Plaintiff's Allegations[4]

Hamze alleges that, on January 20, 2018, at Florida State Prison, Sergeant Nosbisch approached his cell and notified him that he had a "medical callout for a sick-call." AC at 6. According to Hamze, when he arrived at medical, Nurse Singletary examined him, and "told [him] to say: 'women rule the world,' or 'they'll f*** you up.' []You're gonna see and next time you say yes ma'am.'" Id. at 7. He asserts that Nurse Singletary then directed Sergeants Nosbisch, Brown, and Warner to "'get him'" and left the room. Id. Sergeants Nosbisch, Brown, and Warner allegedly punched Hamze several times, and after he fell to the floor, they continued to kick him in the face, arms, chest, torso, abdomen, back, and legs. Id. According to Hamze, Sergeant Brown jumped on his leg and ankle several times. Id. Hamze estimates that he endured the assault for five minutes, after which Captain Hall entered the room, falsely declared that Hamze had assaulted corrections staff, and placed a spit shield on his head. Id. When Hamze returned to his cell, Captain Hall stated "that this was done on his orders based on the orders of Warden (B.V.

---

[4] In considering Defendants' Motion, the Court must accept all factual allegations in the AC as true, consider the allegations in the light most favorable to Hamze, and accept all reasonable inferences that can be drawn from such allegations. Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003); Jackson v. Okaloosa Cnty., 21 F.3d 1531, 1534 (11th Cir. 1994). As such, the facts recited here are drawn from the AC, and may well differ from those that ultimately can be proved.

3

Reddish), who wanted to see if [Hamze] had the heart to hit the officers, or only to write grievances on them." Id. Hamze contends that Nurses Singletary and Burgin denied him medical treatment. Id. at 8. Although Hamze states that he notified Nurse Burgin that he had a broken nose and ankle, she refused to refer him for an x-ray appointment or to provide him pain medication. Id.

Hamze further alleges that Warden Reddish shut down the fixed wing camera system in C-dorm and the medical area during the assault. Id. He also maintains that Warden Reddish tampered with institutional logs to reflect that Sergeant Nosbisch worked in M-dorm, not J-dorm. Id. According to Hamze, "[t]his is why [Nosbisch] identified himself to me as Gerow[5] and then entered on the MINS report that he was assigned to M wing, where officer James Gerow was actually assigned." Id. at 9.

## III. Summary of the Arguments

In their Motion, Defendants argue that the Court should dismiss the claims against them because Hamze failed to properly exhaust his administrative remedies. Doc. 84 at 8–12. They also contend that to the extent Hamze sues Defendants for damages in their official capacities, the claims

---

[5] In his initial Complaint, Hamze named Sergeant Gerow as a Defendant and identified Sergeant Gerow as the individual who escorted him from his cell to medical. See Complaint at 2, 7.

against them should be dismissed. Id. at 12–13. Hamze responds that the Court should not dismiss the claims against Defendants because he did exhaust his available administrative remedies and he sues Defendants for injunctive relief in their official capacities. Doc. 88 at 1–7.

## IV. Exhaustion of Administrative Remedies

### A. PLRA Exhaustion

The Eleventh Circuit Court of Appeals has held the exhaustion of administrative remedies by a prisoner is "a threshold matter" to be addressed before considering the merits of a case. Chandler v. Crosby, 379 F.3d 1278, 1286 (11th Cir. 2004); see also Myles v. Miami-Dade Cnty. Corr. & Rehab. Dep't, 476 F. App'x 364, 366 (11th Cir. 2012)[6] (noting that exhaustion is "a 'threshold matter' that we address before considering the merits of the case") (citation omitted). It is well settled that the Prison Litigation Reform Act (PLRA) requires an inmate wishing to challenge prison conditions to first exhaust all available administrative remedies before asserting any claim under 42 U.S.C. § 1983. See 42 U.S.C. § 1997e(a); Porter v. Nussle, 534 U.S.

---

[6] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060–61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

516, 524 (2002). A prisoner such as Hamze, however, is not required to plead exhaustion. <u>See</u> <u>Jones v. Bock</u>, 549 U.S. 199, 216 (2007). Instead, the United States Supreme Court has recognized that "failure to exhaust is an affirmative defense under the PLRA[.]" <u>Id.</u> Notably, exhaustion of available administrative remedies is "a precondition to an adjudication on the merits" and is mandatory under the PLRA. <u>Bryant v. Rich</u>, 530 F.3d 1368, 1374 (11th Cir. 2008). Not only is there an exhaustion requirement, the PLRA "requires proper exhaustion." <u>Woodford v. Ngo</u>, 548 U.S. 81, 93 (2006).

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so <u>properly</u> (so that the agency addresses the issues on the merits)." <u>Pozo</u>,[7] 286 F.3d, at 1024 (emphasis in original).

---

[7] <u>Pozo v. McCaughtry</u>, 286 F.3d 1022 (7th Cir. 2002).

<u>Woodford</u>, 548 U.S. at 90. And, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." <u>Id.</u>

The United States Supreme Court has instructed that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement. The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" <u>Ross v. Blake</u>, 578 U.S. 632, 648 (2016). For an administrative remedy to be available, the "remedy must be 'capable of use for the accomplishment of [its] purpose.'" <u>Turner v. Burnside</u>, 541 F.3d 1077, 1084 (11th Cir. 2008) (quoting <u>Goebert v. Lee Cnty.</u>, 510 F.3d 1312, 1322–23 (11th Cir. 2007)).

Because failure to exhaust administrative remedies is an affirmative defense, Defendants bear "the burden of proving that [Hamze] has failed to exhaust his available administrative remedies." <u>Id.</u> at 1082. In accordance with Eleventh Circuit precedent, a court must employ a two-step process when examining the issue of exhaustion of administrative remedies.

> After a prisoner has exhausted the grievance procedures, he may file suit under § 1983. In response to a prisoner suit, defendants may bring a motion to dismiss and raise as a defense the prisoner's failure to exhaust these administrative remedies. <u>See</u> <u>Turner</u>, 541 F.3d at 1081. In <u>Turner v. Burnside</u> we

7

established a two-step process for resolving motions to dismiss prisoner lawsuits for failure to exhaust. 541 F.3d at 1082. First, district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true. The court should dismiss if the facts as stated by the prisoner show a failure to exhaust. Id. Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust. Id. at 1082–83; see also id. at 1082 (explaining that defendants bear the burden of showing a failure to exhaust).

Whatley v. Warden, Ware State Prison, 802 F.3d 1205, 1209 (11th Cir. 2015). At step two of the procedure established in Turner, the Court can consider facts outside the pleadings as long as those facts do not decide the case and the parties have had sufficient opportunity to develop the record. Bryant, 530 F.3d at 1376; see also Jenkins v. Sloan, 826 F. App'x 833, 838–39 (11th Cir. 2020). In evaluating whether Hamze has satisfied the exhaustion requirement, the Court notes that the Eleventh Circuit has determined that a "prisoner need not name any particular defendant in a grievance in order to properly exhaust his claim." Parzyck v. Prison Health Servs., Inc., 627 F.3d 1215, 1218 (11th Cir. 2010).

## B. Florida's Prison Grievance Procedure

State law "determines what steps are required to exhaust." Dimanche v. Brown, 783 F.3d 1204, 1207 (11th Cir. 2015); see also Jones, 549 U.S. at 218 (stating that "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion"). The FDOC provides an internal grievance procedure for its inmates. See Fla. Admin. Code R. 33-103.001 through 33-103.018. Generally, to properly exhaust administrative remedies, a prisoner must complete a three-step sequential process. First, an inmate must submit an informal grievance at the institutional level to a designated staff member responsible for the specific problem. See Fla. Admin. Code R. 33-103.005. If the issue is not resolved, the inmate must submit a formal grievance at the institutional level. See Fla. Admin. Code R. 33-103.006. If the matter is not resolved through formal and informal grievances, the inmate must file an appeal to the Office of the FDOC Secretary. See Fla. Admin. Code R. 33-103.007. However, under certain specified circumstances, an inmate can bypass the informal-grievance stage and start with a formal grievance at the institutional level. See Fla. Admin. Code R. 33-103.005(1); 33-103.006(3). Or an inmate can completely bypass the institutional level and proceed directly to the Office of the FDOC Secretary by filing a "direct grievance." See Fla. Admin.

9

Code R. 33-103.007(3). Emergency grievances and grievances of reprisal are types of "direct grievances" that may be filed with the Office of the FDOC Secretary. See Fla. Admin. Code R. 33-103.007(3)(a).

Florida Administrative Code Rule 33-103.011 provides time frames for the submission of grievances. Informal grievances must be received within twenty days from the date on which the grieved incident or action occurred. See Fla. Admin. Code R. 33-103.011(1)(a). Formal grievances must be received no later than fifteen days from the date of the response to the informal grievance. See Fla. Admin. Code R. 33-103.011(1)(b). Similarly, grievance appeals to the Office of the FDOC Secretary must be received within fifteen days from the date that the response to the formal grievance is returned to the inmate. See Fla. Admin. Code R. 33-103.011(1)(c). According to Rule 33-103.014, an informal grievance, formal grievance, direct grievance, or grievance appeal "may be returned to the inmate without further processing if, following a review of the grievance, one or more . . . conditions are found to exist." Fla. Admin. Code R. 33-103.014(1). The rule provides an enumerated list as "the only reasons for returning a grievance without a response on the merits." See Fla. Admin. Code R. 33-103.014(1)(a)–(y). A grievance can be returned without action if it: is untimely; "addresses more than one issue or

complaint"; is "so broad, general or vague in nature that it cannot be clearly investigated, evaluated, and responded to"; is "not written legibly and cannot be clearly understood"; is a supplement to a previously-submitted grievance that has been accepted for review; does not "provide a valid reason for by-passing the previous levels of review as required or the reason provided is not acceptable"; or does not include the required attachments. See Fla. Admin. Code R. 33-103.014(1).

### C. The Parties' Positions Regarding Exhaustion

Defendants assert that Hamze did not submit any grievances about the January 20th assault. Doc. 84 at 8. "The closest [Hamze] came was to submitting a timely formal grievance regarding the DR from the incident." Id. However, they argue that this grievance did not concern the claims of excessive force raised against Defendants in the AC, and, as such, Hamze did not properly exhaust his administrative remedies as to those claims. See id. at 8–9.

With their Motion, Defendants provide declarations and records regarding Hamze's exhaustion efforts. See Docs. 84-1 through 84-4. In a sworn declaration, Sabrina Hoover, a classification officer at the Northwest Florida Reception Center, states that between January 20, 2018, and June 1, 2021,

11

Hamze filed no informal or formal grievances "regarding the allegations described in his complaint for excessive force against him by the defendants." Doc. 84-1 at 2. Hoover bases this statement on her review of the available grievance records "in the FDC's Central database and that of Florida State Prison. . . ." Id. Lawanda Sanders-Williams, an operation analyst for the FDOC Bureau of Policy Management and Inmate Appeals, also states under penalty of perjury that between January 20, 2018, and June 1, 2021, Hamze filed "no appeals of any kind" regarding the allegations raised in the AC. Doc. 84-2 at 2.

Defendants also attach as an exhibit the formal grievance that Hamze submitted at Santa Rosa Correctional Institution (SRCI) on February 5, 2018, in which he addresses the disciplinary report from the January 20, 2018 incident:

> This is an appeal of DR # 205-180180 with the following errors in the process thereof:
>
> 1) It is a false report by Srgt. Nosbish for an infraction alleged in the Medical Department where he was not present at the infraction time, Jan. 20, [20]18 at 3:08 pm or around it. This is proven by the evidence proffered in the investigation of this DR to include:
>
> a. The B wing camera showing that the staff that pulled me out of my cell for medical were Srgt. Gerow [and] Officer A. Williams ONLY.
>
> b. The camera records of the Medical Dept. showing

12

that ONLY Srgt. Gerow was the one escorting me into medical while Srgt. Nosbish never entered Medical anytime around the infraction (before or after). And particularly that the only staff that entered the ER room (where the infraction scene was) were ONLY Srgts. Brown, Warner, Gerow [and] Nurse Jackson and another short, black-haired nurse, followed by Srgt. Williams afterwards. Until[] the infraction alleged was declared to be concluded [and] the handheld camera arrived with the Lt. Hall, NO other staff were present. Nurse Singletary was not present in the ER room either, also signifying the falsehood of this DR.

2) The investigation of the DR was in violation of Ch. 33-601.304 because:

a. It mentions a staff member[,] Singletary[,] whose statement was not obtained.

b. It leaves out obtaining statements of staff present at the scene, all of whom were listed as witnesses, including Jackson, Gerow, Brown [and] Warner.

3) It does not provide any disposition of the evidence requested, the videotape records of B-wing [and] Medical [and] the staff shown.

4) Srgt. Nosbish's witness statement was not obtained, other than the Report itself, which violates Ch. 33-601.304. A disciplinary team may not rely on the statement of the DR report as evidence if the charging officer does not provide a sworn statement in support thereof. And even afterwards the obtaining of that sworn statement, the team may not rely solely on the testimony of the charging officer without "some" other evidence, for a conviction.

13

> 5) This DR was served on Tuesday the 23rd at 11:30 pm, more than 72 hrs after the time it was written, at F.S.P. where DRs are served 24/7 within or without business hours. This delay is inexcusable.
>
> 6) Adding to the falsity of this DR is stating at its end: "No injuries noted," while the handheld camera, the report of Dr. Gonzalez who pulled me out for urgent care Monday Jan. 22, 2018 at 9:50 am or around it, prove [and] show that I had significant injuries.

Doc. 84-4 at 6–7. On February 13, 2018, SRCI responded:

> Your request for administrative remedy or appeal has been received, reviewed and evaluated.
>
> Disciplinary report #205-180180 has been reviewed. You have not presented any information that was not already considered or would change the decision made by the disciplinary hearing team.
>
> You are grieving DR log #205-180180, battery or attempted battery on an officer, based on your claim that Sgt. Nosbisch was not present at the alleged incident.
>
> You state that camera will show Sgt. Gerow was the sergeant present and Officer A. Williams was also present. You also state that Nurse Singletary was not present. You also believe that not all witnesses were not given witness statements to complete.
>
> I reviewed the DC6-151 and you did not call any evidence, including the camera, so the disciplinary team did not have that evidence to review. I also reviewed the DC6-112B witness dispositions forma [sic] and noted that you did not call any witnesses. You also refused to appear at the hearing so the

14

disciplinary team made its decision based on the evidence and witness statements it had. The statement of facts indicates that LPN Singletary was present and she provided a witness statement attesting that. Sgt. Nosbisch attested also that he was attempting to escort you back to your cell when you spit in his face.

Based on the above information, your grievance is denied.

Id. at 5.

Hamze filed an appeal on February 15, 2018, stating in pertinent part:

This is a 2nd appeal of DR #205-180180 based on:

1) The warden's response states that Form DC6-151 [and] DC6-112B indicate that I did not call any evidence or witnesses. First, it is the duty of the serving officer to ensure the completion of these forms and obtain a signature or refusal regarding witnesses and evidence. See Ch. 33-601.304(2)(f). In this case, the DR was not properly served according to Ch. 33 because:

A. The serving officer did not document on the DR his name, ID#, time of service, but left all these entries blank.

B. He was not the one that collected my statement [and] forms DC6-151 [and] DC6-112B as he was required, but it was Srgt. Willis who collected them. There is videotape evidence proving that, besides the DR report itself (not signed for service).

(Note that I did not raise this in the 1st appeal because I did not know that my evidence [and] witnesses

15

requested were not reviewed based on a certain [and] obvious malfesance [sic]. In highlighting this misconduct, I assert again that I did request evidence [and] witnesses in properly filled [and] signed DC6-151 [and] DC6-112B form. The fact that they may have been maliciously exonerated does not excuse not reviewing my evidence [and] witnesses cited in the first appeal.)

2) LPN Singletary was NOT working at F.S.P. on the date of the infraction Jan. 20, and certainly was not in the medical department. There is ample evidence to that including prisons logs [and] forms (which I don't have the names of) in addition to the videotape [and] camera evidence, etc. And requiring a single type of evidence to prove this fundamental [and] detrimental fact is not sound where this requirement trifles substantive proofs and facts, as in here, which all are readily available [and] reviewable to this office.

3) The logs [and] the above facts also refute [and] disqualify the statement of Srgt. Nosbish that he was present [and] attempting to escort me back to my cell.

4) The Warden's response does not address the false statement that a reactionary use of force resulted in NO injuries.

5) It does not address the delay in serving the DR beyond 72 hrs from the infraction times for no reason.

Id. at 3–4. On February 20, 2018, the Secretary denied his appeal:

Your administrative appeal has been received and evaluated. The response you received to the issues you raised at the institutional level is appropriate.

To the extent that you have included new issues at the

appeal level, which were not presented at the institutional level, those issues are returned without response.

Based on the forgoing [sic], your appeal is denied.

Id. at 2.[8]

Hamze responds that he properly exhausted his administrative remedies when he submitted the "DR appeals" because they "challenge the truth of the DR, and therefore the appropriateness and the lawfulness of the force used, and further complain of significant injuries resulting from that excessive use of force." Doc. 88 at 1. He also argues that the sworn declarations of Hoover and Sanders-Williams only concern grievances that he filed until June 1, 2021, even though he initiated this lawsuit "several months later." Id. at 2. According to Hamze, he filed numerous, relevant grievances about the incident from January 25, 2018, to October 5, 2021. See id. at 2, 8–9. Hamze alleges that he never received responses to those grievances. Id. at 3, 8–9.

### D. **Turner** Step One

Under the first step of the Turner analysis, the Court must review the allegations in the Motion and Response and accept as true Hamze's allegations.

---

[8] In the Motion, Defendants asserted that Hamze's administrative appeal was not timely filed, and it was returned without action. Doc. 84 at 3. They later withdrew the assertion. See Notice of Withdrawal of Certain Assertions (Doc. 89).

See Whatley, 802 F.3d at 1209. If Hamze's allegations in the Response show a failure to exhaust, then dismissal would be appropriate. See id.

The Court now turns to the allegations in the parties' respective filings concerning Hamze's exhaustion efforts. Defendants assert that Hamze did not submit any grievances about the January 20th assault. Doc. 84 at 8. They argue that although Hamze submitted formal and appeal grievances about a related disciplinary report, those grievances did not sufficiently exhaust the issues raised in the Complaint and AC. See id. at 8–9.

Hamze responds that the disciplinary report grievances address the use of force, and, as such, he contends that the grievances are sufficient to properly exhaust his administrative remedies. Doc. 88 at 1. Nevertheless, Hamze seemingly asserts that he did not have available administrative remedies because he attempted to submit grievances about the use of force at multiple institutions, but never received responses to those attempted grievances. Id. at 4, 8–9. He also states that he "underwent serious reprisals to include threats, gassing and unprovoked physical abuse at each of the institutions at which [he] filed grievances regarding the incident in chief" Id. at 9. Accepting Hamze's view of the facts as true, the Court cannot dismiss the AC at the first step of the Turner analysis.

18

### E. <u>Turner</u> Step Two

As dismissal would not be appropriate based on the allegations in the Motion and Response, the Court next turns to the second prong of the <u>Turner</u> analysis. Here, the Court finds Hamze failed to properly exhaust his administrative remedies because he did not grieve the subject of the excessive use of force claims raised against Defendants in his AC.

The purpose of administrative exhaustion "is to put the [administrative authority] on notice of all issues in contention and to allow the [authority] an opportunity to investigate those issues." <u>Chandler</u>, 379 F.3d at 1287 (quotations and citation omitted) (alterations in original). To properly exhaust administrative remedies, "prisoners must complete the administrative review process in accordance with the [prison's] applicable procedural rules." <u>Jones</u>, 549 U.S. at 218 (quotation marks omitted). The FDOC's rules provide that informal and formal grievances must be legible, include accurately stated facts, and address only one issue or complaint; however, it does not include any requirements regarding the level of detail required for grievances. Fla. Admin. Code R. 33-103.005(2)(b)2; 33-103.006(2)(d)–(f). Where a prison's grievance procedure does not require a certain level of specificity, "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought."

19

Strong v. David, 297 F.3d 646, 650 (7th Cir. 2002), overruled in part on other grounds by Bell Atl. Corp. v. Twombly, 550 U.S. 544, 563 (2007); see Harvard v. Inch, 411 F. Supp. 3d 1220, 1244 (N.D. Fla. 2019).[9]

In his AC, Hamze asserts that Sergeants Warner, Nosbisch, and Brown violated the Eighth Amendment when they physically assaulted him. AC at 6–7. The crux of Hamze's claims against these Defendants is that they subjected him to constitutionally excessive force. However, his formal and appeal grievances involve a disciplinary report that Hamze sought to overturn. Hamze labelled the formal grievance as "DR Appeal," Doc. 84-4 at 6, and he alleged "errors in the process," id. at 6. He asserted that Sergeant Nosbisch and Nurse Singletary were not present during the incident; corrections staff did not obtain a witness statement from Sergeant Nosbisch, "other than the report itself"; corrections staff served him with the disciplinary report more than seventy-two hours after they wrote it; and the report did not accurately reflect the injuries that he sustained. Id. at 6–7. It is also evident from the institutional response that prison officials did not interpret Hamze's formal

---

[9] The Court notes that although decisions of other district courts are not binding, they too may be cited as persuasive authority. See Stone v. First Union Corp., 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects.").

grievance as a complaint about excessive force or an Eighth Amendment violation, but as a grievance challenging the disciplinary report and proceedings. In the institutional response, the Warden stated that Hamze did not present information "that was not already considered or would change the decision made by the disciplinary hearing team." Id. at 5. Further, in his administrative appeal, Hamze focused solely on the allegations stated in his formal grievance, in addition to alleged deficiencies with the serving document, id. at 3–4, and in his denial of the appeal, the Secretary concluded that Hamze received an "appropriate" response to these issues at the institutional level, id. at 2. A review of the record establishes that the focus of Hamze's grievances was the disciplinary report and the process associated with that discipline, not the alleged use of excessive force. Accordingly, the Court finds that these grievances did not suffice to alert officials to the issues in contention in Hamze's AC. See Berry v. Keith, No. 3:20-CV-261-MMH-JBT, 2021 WL 1561493, at *6 (M.D. Fla. Apr. 21, 2021) (finding plaintiff's grievances that challenged a disciplinary report arising from corrections officers' use of force did not properly exhaust his Eighth Amendment excessive force claims); Lawson v. Crutchfield, No. 5:15-CV-150-MP-GRJ, 2016 WL 5219466, at *7 (N.D. Fla. July 5, 2016) (same), report and recommendation adopted, No. 5:15-

CV-00150-MP-GRJ, 2016 WL 5219626 (N.D. Fla. Sept. 21, 2016).

In addition, reliable evidence supports the conclusion that Hamze never submitted any other relevant grievances at the institutional level or to the Secretary. See Docs. 84-1 at 2 ("During that period [January 20, 2018, to June 1, 2021], inmate Hamze filed no informal or formal grievances regarding the allegations described in his complaint for excessive force against him by the defendants."); 84-2 at 2 ("During that period [January 20, 2018, to June 1, 2021], inmate Hamze filed no appeals of any kind regarding the allegations raised in his complaint."); see also Whatley v. Smith, 898 F.3d 1072, 1083 (11th Cir. 2018) ("The district court permissibly weighed the evidence and credited the defendants' affidavits over Mr. Whatley's exhibits."). Although Hamze asserts that he submitted grievances at five different institutions about the use of force, Doc. 88 at 8–9, he offers no credible evidence to support his claim beyond his self-serving allegations. For example, he fails to provide the grievance log numbers or to identify what type of grievances he submitted. As he acknowledges, no such grievances were logged. Doc. 88 at 9; see Docs. 84-1 through 84-2. While a lack of documentation would be consistent with Hamze's claim that correctional staff intercepted and destroyed these grievance "a district court does not clearly err when it makes a choice between two

permissible views of the evidence." <u>Whatley</u>, 898 F.3d at 1083 (quotation marks omitted). And, even assuming that <u>all</u> <u>five</u> <u>institutions</u> failed to respond to Hamze's grievances, "the grievance procedure provides that he could have 'proceed[ed] to the next step of the grievance process'" after the expiration of the time to respond to the informal or formal grievances and his failure to do so renders his claims against Defendants unexhausted. <u>See</u> <u>Turner</u>, 541 F.3d at 1084 (finding that "a prison's failure to respond to a formal grievance did not relieve the prisoner of his obligation to file an appeal when the grievance procedure provided that prisoners could file an appeal if they did not receive a response to a formal grievance within 30 days."); <u>see also</u> <u>Pavao v. Sims</u>, 679 F. App'x 819, 826 (11th Cir. 2017) (finding that "[b]ecause [the plaintiff] could have proceeded by filing an administrative appeal, the PLRA still requires him to file an appeal notwithstanding the prison's lack of response."). Hamze did not do so.

To the extent Hamze argues that he exhausted his administrative remedies because he submitted grievances between June and October 2021, the Court is not persuaded. "[A]n inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure <u>before</u> pursuing a § 1983 lawsuit." <u>Brown v. Sikes</u>, 212 F.3d 1205,

1207 (11th Cir. 2000) (emphasis added). Hamze filed his Complaint on May 20, 2021. Complaint at 17. Accordingly, any grievances filed after that date are not pertinent to the Court's determination of whether Hamze satisfied the PLRA's exhaustion requirement. See Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) ("The only facts pertinent to determining whether a prisoner has satisfied the PLRA's exhaustion requirement are those that existed when he filed his original complaint."). Similarly, Hamze's declaration of "physical abuse to the Inspector General in the handheld videotape" also fails to satisfy the exhaustion requirement. See AC at 12. The FDOC provides an internal grievance procedure for its inmates, see Fla. Admin. Code R. 33-103.001 through 33-103.018, that provides specific sequential steps for proper exhaustion. The FDOC rules do not and did not include any provisions for video grievances.

Hamze seemingly alleges that he did not have available administrative remedies because corrections staff physically abused and threatened him. See Doc. 88 at 9. The Eleventh Circuit has recognized that "a prison official's serious threats of substantial retaliation against an inmate" for filing a grievance in good faith can make administrative remedies "unavailable." Turner, 541 F.3d at 1085. In doing so, the court explained that a prison

24

official's serious threats of substantial retaliation will excuse the exhaustion requirement if two conditions are met:

> (1) the threat actually did deter the plaintiff inmate from lodging a grievance or pursuing a particular part of the process; and (2) the threat is one that would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance or pursuing the part of the grievance process that the inmate failed to exhaust.

Id. In determining whether a plaintiff has made this showing, a court may "consider[] [a plaintiff's] history of filing grievances as evidence that the defendants did not make administrative remedies unavailable to him or . . . destroy his grievances." Whatley, 898 F.3d at 1083. "While the burden is on the defendant to show an available administrative remedy, once that burden has been met, the burden of going forward shifts to the plaintiff, who, pursuant to Turner, must demonstrate that the grievance procedure was 'subjectively' and 'objectively' unavailable to him." Geter v. Baldwin State Prison, 974 F.3d 1348, 1356 (11th Cir. 2020) (quoting Turner, 541 F.3d at 1085); id. at 1356 n.14 ("But once the [prison official] has established that the inmate failed to resort to administrative remedies, the onus falls on the inmate to show that such remedies were unavailable to him." (quoting Rinaldi v. United States, 904 F.3d 257, 268 (3d Cir. 2018))).

Here, Defendants have established that the FDOC has an administrative grievance process and that Hamze failed to resort to the FDOC's established grievance process. Thus, the burden shifts to Hamze to "demonstrate that the [FDOC's] grievance procedure was 'subjectively' and 'objectively' unavailable to him." Id. at 1356. Hamze's vague, conclusory allegations fail to satisfy this burden. See Doc. 88 at 9 ("It is important to state that I underwent serious reprisals to include threats, gassing and unprovoked physical abuse at each of the institutions at which I filed grievances regarding the incident in chief."). Moreover, even if Hamze was subjectively deterred from filing grievances at any of the institutions, he could have bypassed the institutional level and submitted a grievance of reprisal directly with the FDOC Secretary's Office in a sealed envelope. See Fla. Admin. Code R. 33-103.007(3)(a). Hamze does not allege that he filed such a grievance before initiating this lawsuit. See Doc. 88 at 9. Accordingly, the Court finds Hamze had available administrative remedies, and he failed to properly exhaust those remedies as to the excessive force claims against Sergeants Nosbisch, Warner, and Brown. The Motion is due to be granted on that basis.[10]

---

[10] Because the claims against Defendants are due to be dismissed for failure to exhaust, the Court need not address Defendants' remaining argument.

### F. Motions for Leave to Reply and for Evidentiary Hearing

In resolving the Motion, the Court notes that Hamze has asked the Court for leave to file a reply in support of his request for an evidentiary hearing on the issue of exhaustion. <u>See</u> Doc. 115. According to Hamze, he has received "several conflicting responses from the grievance coordinators and the classification dep't regarding the grievance log, including a response to a very recent request he filed . . . which indicates that a grievance was actually filed in 5.2021 regarding the incident in chief which the defense excludes from their log disclosure to the plaintiff. . . ." <u>Id.</u> at 1. In support of his assertion, Hamze attaches an informal grievance and grievance response, providing the log number (2105-118-274) of a formal grievance that Hamze submitted in May 2021. Doc. 115-1. The Court has concluded that a reply would not aid in the resolution of the Motion. Neither the institutional grievance nor the grievance appeal that correspond to log number 2105-118-274 address the alleged use of force in this case. <u>See</u> Docs. 116-1 through 116-2. And, as Hamze filed the grievance after initiating this case, it would not be relevant to the Court's exhaustion analysis.

The Court also determined that no evidentiary hearing was warranted. <u>See</u> Doc. 102. Both parties filed written arguments regarding the exhaustion

27

issue, and they have had ample opportunity to file affidavits, exhibits, and any other evidence in support of their positions. In addition, the parties completed some discovery before Defendants moved to dismiss the AC. Although Hamze contends that he has obtained the log number of a grievance that he filed in October 2021 regarding the incident, Doc. 102 at 1, the Court notes that he filed the alleged grievance after he initiated this lawsuit. As such, it would have no impact on the Court's analysis. Hamze offers no other reason to suggest that he would have additional evidence bearing on exhaustion to present at a hearing. Therefore, his request is denied.

Accordingly, it is now

**ORDERED:**

1.      Defendants Warner, Brown, and Nosbisch's Motion to Dismiss (Doc. 84) is **GRANTED** to the extent Defendants seek dismissal for Hamze's failure to exhaust his administrative remedies. In all other respects, the Motion is denied without prejudice.

2.      Plaintiff Hamze's Motion for Evidentiary Hearing (Doc. 102) and Motion for Leave to Reply (Doc. 115) are **DENIED**.

3.      The claims against Defendants Warner, Brown, and Nosbisch are

**DISMISSED WITHOUT PREJUDICE**.[11] The Court directs the **Clerk** to

terminate Warner, Brown, and Nosbisch as Defendants in the case.

4.      Pursuant to Federal Rule of Civil Procedure 54(b), there being no

just reason for delay the **Clerk** shall enter judgment in accordance with this

order.

**DONE AND ORDERED** at Jacksonville, Florida, this 10th day of

January, 2024.

*Marcia Morales Howard*

**MARCIA MORALES HOWARD**
United States District Judge

Jax-9 1/3
c:      Abdelaziz Hamze, #L81379
        Counsel of record

---

[11] The applicable four-year statute of limitations likely has expired as to Hamze's claims against these Defendants. However, the Court dismisses Hamze's claims against them without prejudice in the event that he could show otherwise.

29