UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ABDELAZIZ HAMZE,

      Plaintiff,

v.                                                    Case No. 3:21-cv-565-MMH-SJH

R. SINGLETARY, et al.,

      Defendants.

_____

## **ORDER**

### **I. Status**

Plaintiff Abdelaziz Hamze, an inmate in the custody of the Florida Department of Corrections (FDOC), initiated this action on May 20, 2021,[1] by filing a pro se Complaint for Violation of Civil Rights (Complaint; Doc. 1)[2] pursuant to 42 U.S.C. § 1983. Hamze is proceeding on an Amended Complaint (AC; Doc. 80) with a supplement (Doc. 83). In the AC, Hamze names as Defendants: (1) Sergeant Charles Orrin Nosbisch; (2) Sergeant William Mikel Warner; (3) Sergeant Robert Allan Brown; (4) Nurse R. Singletary; (5) Lieutenant William Hall; (6) Nurse Katherine Dee Burgin; and (7) Warden

_____

[1] See Houston v. Lack, 487 U.S. 266, 276 (1988) (mailbox rule).

[2] For all pleadings and documents filed in this case, the Court cites to the document and page numbers as assigned by the Court's Electronic Case Filing System.

Barry V. Reddish.[3] AC at 2–4. This matter is before the Court on Lieutenant Hall and Warden Reddish's Motion to Dismiss (FDOC Motion; Doc. 136) and Nurses Singletary and Burgin's Motion to Dismiss (Medical Motion; Doc. 150) with exhibits (Doc. 150-1). Hamze, with the assistance of counsel, filed a response in opposition to the Motions. See Response (Doc. 161). He also submitted exhibits. See Docs. 161-1 through 161-2. The Motions are ripe for review.

## II. Hamze's Allegations[4]

Hamze alleges that, on January 20, 2018, at Florida State Prison, Sergeant Nosbisch approached his cell and notified him that he had a "medical callout for a sick-call." AC at 6. According to Hamze, when he arrived at medical, Nurse Singletary examined him, and "told [him] to say: 'women rule the world,' or 'they'll f*** you up.' []You're gonna see and next time you say yes ma'am.'" Id. at 7. He asserts that Nurse Singletary then directed Sergeants Nosbisch, Brown, and Warner to "'get him'" and left the room. Id.  Sergeants

---

[3] The Court previously dismissed without prejudice the claims against Sergeants Nosbisch, Warner, and Brown. See Order (Doc. 117).

[4] In considering the Motions, the Court must accept all factual allegations in the AC as true, consider the allegations in the light most favorable to Hamze, and accept all reasonable inferences that can be drawn from such allegations. Holland v. Carnival Corp., 50 F.4th 1088, 1093 (11th Cir. 2022). As such, the facts recited here are drawn from the AC, and may well differ from those that ultimately can be proved.

Nosbisch, Brown, and Warner then punched Hamze several times, and after he fell to the floor, they continued to kick him in the face, arms, chest, torso, abdomen, back, and legs. Id. According to Hamze, Sergeant Brown jumped on his leg and ankle several times. Id. Hamze estimates that he endured the assault for five minutes, after which Captain Hall entered the room, falsely declared that Hamze had assaulted corrections staff, and placed a spit shield on his head. Id. When Hamze returned to his cell, Captain Hall stated "that this was done on [Captain Hall's] orders based on the orders of Warden (B.V. Reddish), who wanted to see if [Hamze] had the heart to hit the officers, or only to write grievances on them." Id. Hamze contends that Nurses Singletary and Burgin denied him medical treatment. Id. at 8. Although Hamze states that he notified Nurse Burgin that he had a broken nose and ankle, she refused to refer him for an x-ray appointment or to provide him pain medication. Id.

Hamze further alleges that Warden Reddish shut down the fixed wing camera system in C-dorm and the medical area during the assault. Id. He also maintains that Warden Reddish tampered with institutional logs to reflect that Sergeant Nosbisch worked in M-dorm, not J-dorm. Id. According to

Hamze, "[t]his is why [Nosbisch] identified himself to me as Gerow[5] and then entered on the MINS report that he was assigned to M wing, where officer James Gerow was actually assigned." Id. at 9.

### III. Summary of the Arguments

In the FDOC Motion, the FDOC Defendants argue that the Court should dismiss the claims against them because Hamze failed to properly exhaust his administrative remedies. FDOC Motion at 10–15. They also assert that to the extent Hamze sues them for damages in their official capacities, they are entitled to Eleventh Amendment immunity. Id. at 15–16. The Medical Defendants similarly argue that the Court should dismiss the claims against them because Hamze failed to properly exhaust his administrative remedies. Medical Motion at 3–6. In the alternative, they contend that Hamze fails to state a claim upon which relief can be granted. Id. at 6–9.

Hamze opposes the Motions, arguing that he exhausted his available administrative remedies, the FDOC Defendants are not immune from suit in their official capacities because he requests injunctive relief, and he pleads

---

[5] In his initial Complaint, Hamze named Sergeant Gerow as a Defendant and identified Sergeant Gerow as the individual who escorted him from his cell to medical. See Complaint at 2, 7.

sufficient facts to state a deliberate indifference claim against the Medical Defendants. Response at 1–9.

## IV. Exhaustion of Administrative Remedies

### A. PLRA Exhaustion

The Eleventh Circuit Court of Appeals has held the exhaustion of administrative remedies by a prisoner is "a threshold matter" to be addressed before considering the merits of a case. Chandler v. Crosby, 379 F.3d 1278, 1286 (11th Cir. 2004); see also Myles v. Miami-Dade Cnty. Corr. & Rehab. Dep't, 476 F. App'x 364, 366 (11th Cir. 2012)[6] (noting that exhaustion is "a 'threshold matter' that we address before considering the merits of the case") (citation omitted). It is well settled that the Prison Litigation Reform Act (PLRA) requires an inmate wishing to challenge prison conditions to first exhaust all available administrative remedies before asserting any claim under 42 U.S.C. § 1983. See 42 U.S.C. § 1997e(a); Porter v. Nussle, 534 U.S. 516, 524 (2002). A prisoner such as Hamze, however, is not required to plead exhaustion. See Jones v. Bock, 549 U.S. 199, 216 (2007). Instead, the United

---

[6] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060–61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

States Supreme Court has recognized that "failure to exhaust is an affirmative defense under the PLRA[.]" Id. Notably, exhaustion of available administrative remedies is "a precondition to an adjudication on the merits" and is mandatory under the PLRA. Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008). Not only is there an exhaustion requirement, the PLRA "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006).

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." Pozo,[7] 286 F.3d, at 1024 (emphasis in original).

Woodford, 548 U.S. at 90. And, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." Id.

The United States Supreme Court has instructed that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement. The only limit to § 1997e(a)'s mandate is the one

---

[7] Pozo v. McCaughtry, 286 F.3d 1022 (7th Cir. 2002).

6

baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" Ross v. Blake, 578 U.S. 632, 648 (2016). For an administrative remedy to be available, the "remedy must be 'capable of use for the accomplishment of [its] purpose.'" Turner v. Burnside, 541 F.3d 1077, 1084 (11th Cir. 2008) (quoting Goebert v. Lee Cnty., 510 F.3d 1312, 1322–23 (11th Cir. 2007)).

Because failure to exhaust administrative remedies is an affirmative defense, Defendants bear "the burden of proving that [Hamze] has failed to exhaust his available administrative remedies." Id. at 1082. In accordance with Eleventh Circuit precedent, a court must employ a two-step process when examining the issue of exhaustion of administrative remedies.

> After a prisoner has exhausted the grievance procedures, he may file suit under § 1983. In response to a prisoner suit, defendants may bring a motion to dismiss and raise as a defense the prisoner's failure to exhaust these administrative remedies. See Turner, 541 F.3d at 1081. In Turner v. Burnside we established a two-step process for resolving motions to dismiss prisoner lawsuits for failure to exhaust. 541 F.3d at 1082. First, district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true. The court should dismiss if the facts as stated by the prisoner show a failure to exhaust. Id. Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based

> on those findings, defendants have shown a failure to exhaust. Id. at 1082–83; see also id. at 1082 (explaining that defendants bear the burden of showing a failure to exhaust).

Whatley v. Warden, Ware State Prison, 802 F.3d 1205, 1209 (11th Cir. 2015).

At step two of the procedure established in Turner, the Court can consider facts outside the pleadings as long as those facts do not decide the case and the parties have had sufficient opportunity to develop the record. Bryant, 530 F.3d at 1376; see also Jenkins v. Sloan, 826 F. App'x 833, 838–39 (11th Cir. 2020). In evaluating whether Hamze has satisfied the exhaustion requirement, the Court notes that the Eleventh Circuit has determined that a "prisoner need not name any particular defendant in a grievance in order to properly exhaust his claim." Parzyck v. Prison Health Servs., Inc., 627 F.3d 1215, 1218 (11th Cir. 2010).

## B. Florida's Prison Grievance Procedure

State law "determines what steps are required to exhaust." Dimanche v. Brown, 783 F.3d 1204, 1207 (11th Cir. 2015); see also Jones, 549 U.S. at 218 (stating that "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion"). The FDOC provides an internal grievance procedure for its inmates. See Fla. Admin. Code R. 33-103.001 through 33-103.018. Generally, to properly exhaust administrative remedies,

a prisoner must complete a three-step sequential process. First, an inmate must submit an informal grievance at the institutional level to a designated staff member responsible for the specific problem. <u>See</u> Fla. Admin. Code R. 33-103.005. If the issue is not resolved, the inmate must submit a formal grievance at the institutional level. <u>See</u> Fla. Admin. Code R. 33-103.006. If the matter is not resolved through formal and informal grievances, the inmate must file an appeal to the Office of the FDOC Secretary. <u>See</u> Fla. Admin. Code R. 33-103.007. However, under certain specified circumstances, an inmate can bypass the informal-grievance stage and start with a formal grievance at the institutional level. <u>See</u> Fla. Admin. Code R. 33-103.005(1); 33-103.006(3). Or an inmate can completely bypass the institutional level and proceed directly to the Office of the FDOC Secretary by filing a "direct grievance." <u>See</u> Fla. Admin. Code R. 33-103.007(3). Emergency grievances and grievances of reprisal are types of "direct grievances" that may be filed with the Office of the FDOC Secretary. <u>See</u> Fla. Admin. Code R. 33-103.007(3)(a).

Florida Administrative Code Rule 33-103.011 provides time frames for the submission of grievances. Informal grievances must be received within twenty days from the date on which the grieved incident or action occurred. <u>See</u> Fla. Admin. Code R. 33-103.011(1)(a). Formal grievances must be received

no later than fifteen days from the date of the response to the informal grievance. <u>See</u> Fla. Admin. Code R. 33-103.011(1)(b). Similarly, grievance appeals to the Office of the FDOC Secretary must be received within fifteen days from the date that the response to the formal grievance is returned to the inmate. <u>See</u> Fla. Admin. Code R. 33-103.011(1)(c). According to Rule 33-103.014, an informal grievance, formal grievance, direct grievance, or grievance appeal "may be returned to the inmate without further processing if, following a review of the grievance, one or more . . . conditions are found to exist." Fla. Admin. Code R. 33-103.014(1). The rule provides an enumerated list as "the only reasons for returning a grievance without a response on the merits." <u>See</u> Fla. Admin. Code R. 33-103.014(1)(a)–(y). A grievance can be returned without action if it: is untimely; "addresses more than one issue or complaint"; is "so broad, general or vague in nature that it cannot be clearly investigated, evaluated, and responded to"; is "not written legibly and cannot be clearly understood"; is a supplement to a previously-submitted grievance that has been accepted for review; does not "provide a valid reason for by-passing the previous levels of review as required or the reason provided is not acceptable"; or does not include the required attachments. <u>See</u> Fla. Admin. Code R. 33-103.014(1).

10

## C. The Parties' Positions Regarding Exhaustion

The FDOC Defendants assert that Hamze did not submit any grievances about the January 20th assault. FDOC Motion at 10–11. "The closest [Hamze] came to exhausting his administrative remedies was to submit a timely formal grievance regarding the DR from the incident" and a related appeal. Id. at 11. However, they argue that these grievances did not concern the claims of excessive force raised against them in the AC, and, as such, Hamze did not properly exhaust his administrative remedies as to those claims. Id. at 11.

The FDOC Defendants rely on the declarations and records regarding Hamze's exhaustion efforts that Sergeants Nosbisch, Warner, and Brown submitted with their Motion to Dismiss. See Docs. 84-1 through 84-4. In a sworn declaration, Sabrina Hoover, a classification officer at the Northwest Florida Reception Center, states that between January 20, 2018, and June 1, 2021, Hamze filed no informal or formal grievances "regarding the allegations described in his complaint for excessive force against him by the defendants." Doc. 84-1 at 2. Lawanda Sanders-Williams, an operation analyst for the FDOC Bureau of Policy Management and Inmate Appeals, also states under penalty of perjury that between January 20, 2018, and June 1, 2021, Hamze filed "no appeals of any kind" regarding the allegations raised in the AC. Doc. 84-2 at 2.

11

The record reflects that Hamze submitted a formal grievance at Santa Rosa Correctional Institution (SRCI) on February 5, 2018, in which he addressed the disciplinary report from the January 20, 2018 incident:

> This is an appeal of DR # 205-180180 with the following errors in the process thereof:
>
> 1) It is a false report by Srgt. Nosbish [sic] for an infraction alleged in the Medical Department where he was not present at the infraction time, Jan. 20, [20]18 at 3:08 pm or around it. This is proven by the evidence proffered in the investigation of this DR to include:
>
> a. The B wing camera showing that the staff that pulled me out of my cell for medical were Srgt. Gerow [and] Officer A. Williams ONLY.
>
> b. The camera records of the Medical Dept. showing that ONLY Srgt. Gerow was the one escorting me into medical while Srgt. Nosbish [sic] never entered Medical anytime around the infraction (before or after). And particularly that the only staff that entered the ER room (where the infraction scene was) were ONLY Srgts. Brown, Warner, Gerow [and] Nurse Jackson and another short, black-haired nurse, followed by Srgt. Williams afterwards. Until[] the infraction alleged was declared to be concluded [and] the handheld camera arrived with the Lt. Hall, NO other staff were present. Nurse Singletary was not present in the ER room either, also signifying the falsehood of this DR.
>
> 2) The investigation of the DR was in violation of Ch. 33-601.304 because:
>
> a. It mentions a staff member[,] Singletary[,] whose

statement was not obtained.

b. It leaves out obtaining statements of staff present at the scene, all of whom were listed as witnesses, including Jackson, Gerow, Brown [and] Warner.

3) It does not provide any disposition of the evidence requested, the videotape records of B-wing [and] Medical [and] the staff shown.

4) Srgt. Nosbish's [sic] witness statement was not obtained, other than the Report itself, which violates Ch. 33-601.304. A disciplinary team may not rely on the statement of the DR report as evidence if the charging officer does not provide a sworn statement in support thereof. And even afterwards the obtaining of that sworn statement, the team may not rely solely on the testimony of the charging officer without "some" other evidence, for a conviction.

5) This DR was served on Tuesday the 23rd at 11:30 pm, more than 72 hrs after the time it was written, at F.S.P. where DRs are served 24/7 within or without business hours. This delay is inexcusable.

6) Adding to the falsity of this DR is stating at its end: "No injuries noted," while the handheld camera, the report of Dr. Gonzalez who pulled me out for urgent care Monday Jan. 22, 2018 at 9:50 am or around it, prove [and] show that I had significant injuries.

Doc. 84-4 at 6–7. On February 13, 2018, SRCI responded:

Your request for administrative remedy or appeal has been received, reviewed and evaluated.

Disciplinary report #205-180180 has been reviewed. You have not presented any information that was not

13

already considered or would change the decision made by the disciplinary hearing team.

You are grieving DR log #205-180180, battery or attempted battery on an officer, based on your claim that Sgt. Nosbisch was not present at the alleged incident.

You state that camera will show Sgt. Gerow was the sergeant present and Officer A. Williams was also present. You also state that Nurse Singletary was not present. You also believe that not all witnesses were not given witness statements to complete.

I reviewed the DC6-151 and you did not call any evidence, including the camera, so the disciplinary team did not have that evidence to review. I also reviewed the DC6-112B witness dispositions forma [sic] and noted that you did not call any witnesses. You also refused to appear at the hearing so the disciplinary team made its decision based on the evidence and witness statements it had. The statement of facts indicates that LPN Singletary was present and she provided a witness statement attesting that. Sgt. Nosbisch attested also that he was attempting to escort you back to your cell when you spit in his face.

Based on the above information, your grievance is denied.

Id. at 5.

Hamze filed an appeal on February 15, 2018, stating in pertinent part:

This is a 2nd appeal of DR #205-180180 based on:

1) The warden's response states that Form DC6-151

14

[and] DC6-112B indicate that I did not call any evidence or witnesses. First, it is the duty of the serving officer to ensure the completion of these forms and obtain a signature or refusal regarding witnesses and evidence. See Ch. 33-601.304(2)(f). In this case, the DR was not properly served according to Ch. 33 because:

A. The serving officer did not document on the DR his name, ID#, time of service, but left all these entries blank.

B. He was not the one that collected my statement [and] forms DC6-151 [and] DC6-112B as he was required, but it was Srgt. Willis who collected them. There is videotape evidence proving that, besides the DR report itself (not signed for service).

(Note that I did not raise this in the 1st appeal because I did not know that my evidence [and] witnesses requested were not reviewed based on a certain [and] obvious malfesance [sic]. In highlighting this misconduct, I assert again that I did request evidence [and] witnesses in properly filled [and] signed DC6-151 [and] DC6-112B form. The fact that they may have been maliciously exonerated does not excuse not reviewing my evidence [and] witnesses cited in the first appeal.)

2) LPN Singletary was NOT working at F.S.P. on the date of the infraction Jan. 20, and certainly was not in the medical department. There is ample evidence to that including prisons logs [and] forms (which I don't have the names of) in addition to the videotape [and] camera evidence, etc. And requiring a single type of evidence to prove this fundamental [and] detrimental fact is not sound where this requirement trifles substantive proofs and facts, as in here, which all are

readily available [and] reviewable to this office.

3) The logs [and] the above facts also refute [and] disqualify the statement of Srgt. Nosbish [sic] that he was present [and] attempting to escort me back to my cell.

4) The Warden's response does not address the false statement that a reactionary use of force resulted in NO injuries.

5) It does not address the delay in serving the DR beyond 72 hrs from the infraction times for no reason.

Id. at 3–4. On February 20, 2018, the Secretary denied his appeal:

Your administrative appeal has been received and evaluated. The response you received to the issues you raised at the institutional level is appropriate.

To the extent that you have included new issues at the appeal level, which were not presented at the institutional level, those issues are returned without response.

Based on the forgoing [sic], your appeal is denied.

Id. at 2.

The Medical Defendants argue that Hamze failed to properly exhaust his administrative remedies because he did not file any informal grievances, formal grievances, or grievance appeals "pertaining to improper medical care stemming from the January 20, 2018 'abuse.'" Medical Motion at 6. In support of their argument, they attach a grievance appeal log, which reflects that

16

Hamze filed two medical grievances and appeals in February and March 2018. See Medical Motion at 6; Doc. 150-1 at 1. However, the Medical Defendants assert that these grievances did not concern medical care associated with the January 20, 2018 assault. See Medical Motion at 6; Doc. 150-1 at 10–18. The Medical Defendants also attach the above-detailed grievances concerning the disciplinary report from January 20, 2018. See id. at 4–9.

Hamze responds that he did not have available administrative remedies because he submitted multiple grievances at various institutions, but he never received responses to them. See Response at 2–3, 6–7; see also Doc. 161-2. He seemingly concludes that correctional staff intercepted his grievances. See Response at 2–3. In support of his assertions, Hamze submits his own affidavit, in which he states that he submitted formal grievances at SRCI in April 2018, Reception Medical Center in July 2018, Suwannee Correctional Institution (SCI) in November 2018 and April 2019, and Wakulla Correctional Institution in February 2021, but he never received responses to them. Doc. 161-2 at 3. According to Hamze, on December 26, 2019, officers at SCI used excessive force against him, and they advised Hamze that they used force because of the grievances that he had submitted. Id. He asserts that "[u]pon information and belief, the grievance[s] regarding the incident in chief were being intercepted

at different institutions, not only because that is common in F.D.O.C. when it comes to grievances of excessive force, but also because they involve Warden Reddish who has been the subject of investigations before due to an inmate death in 2012." Id. at 3–4.

Hamze further argues that his verbal report of abuse to the Office of the Inspector General (OIG) on a "handheld videotape" sufficiently exhausted his administrative remedies. See AC at 12; Response at 3–6. According to Hamze, "[t]he underlying reasons for the statute have been fully satisfied because the MINS report clearly shows that the warden received [Hamze's] allegations of staff abuse and excessive force and investigated them. . . . [T]he allegations were also investigated by the central office of the Florida Department of Corrections and the office of the inspector general." Response at 4. He argues that "[h]ad the grievances been logged and evaluated, the responses to them would have been nothing but a reflection of the comments and disposition in the MINS report by the warden and the IG without further remedies." Id. Lastly, Hamze contends that his disciplinary report grievances "clearly protest the denial of medical treatment to [Hamze's] injuries resulting from the incident in chief," and therefore, he has sufficiently exhausted those claims for relief. Id. at 7.

18

### D. **Turner** Step One

Under the first step of the Turner analysis, the Court must review the allegations in the Motions and the Response and accept as true Hamze's allegations. See Whatley, 802 F.3d at 1209. If Hamze's allegations in the Response show a failure to exhaust, then dismissal would be appropriate. See id.

Accepting Hamze's view of the facts as true, the Court finds dismissal of the claims against Defendants for lack of exhaustion is not warranted at the first step of Turner. Thus, the Court proceeds to the second step of the two-part process and considers Defendants' arguments about exhaustion and makes findings of fact.

### E. **Turner** Step Two

At the second prong of the Turner analysis, the Court finds Hamze failed to properly exhaust his administrative remedies because he did not grieve the subject of the claims raised against Defendants in the AC. The purpose of administrative exhaustion "is to put the [administrative authority] on notice of all issues in contention and to allow the [authority] an opportunity to investigate those issues." Chandler, 379 F.3d at 1287 (quotations and citation omitted) (alterations in original). To properly exhaust administrative

remedies, "prisoners must complete the administrative review process in accordance with the [prison's] applicable procedural rules." <u>Jones</u>, 549 U.S. at 218 (quotation marks omitted). The FDOC's rules provide that informal and formal grievances must be legible, include accurately stated facts, and address only one issue or complaint; however, it does not include any requirements regarding the level of detail required for grievances. Fla. Admin. Code R. 33-103.005(2)(b)2; 33-103.006(2)(d)–(f). Where a prison's grievance procedure does not require a certain level of specificity, "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought." <u>Strong v. David</u>, 297 F.3d 646, 650 (7th Cir. 2002), <u>overruled in part on other grounds by</u> <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 563 (2007); <u>see</u> <u>Harvard v. Inch</u>, 411 F. Supp. 3d 1220, 1244 (N.D. Fla. 2019).[8]

In the AC, Hamze appears to raise Eighth Amendment excessive force claims against the FDOC Defendants. <u>See</u> AC at 3, 7–9. Liberally construed, he also asserts an excessive force claim against Nurse Singletary and

---

[8] The Court notes that although decisions of other district courts are not binding, they too may be cited as persuasive authority. <u>See</u> <u>Stone v. First Union Corp.</u>, 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects.").

deliberate indifference claims against both Medical Defendants.[9] See id. at 3, 6–8. As to the deliberate indifference claims, the record reflects that Hamze filed seven medical grievances and appeals between January 2018, when the incident occurred, and May 2021, when Hamze filed the Complaint. See Doc. 150-1 at 1–2. However, none of these grievances concerned the denial of medical care associated with the January 20, 2018 use of force. See id. at 10–38. As such, they did not suffice to alert officials to the deliberate indifference claims raised in the AC. Chandler, 379 F.3d at 1287. In addition, reliable evidence supports the conclusion that Hamze never submitted grievances at the institutional level or to the Secretary sufficient to exhaust his excessive force claims. See Docs. 84-1 at 2 ("During that period [January 20, 2018, to June 1, 2021], inmate Hamze filed no informal or formal grievances regarding the allegations described in his complaint for excessive force against him by the defendants."); 84-2 at 2 ("During that period [January 20, 2018, to June 1, 2021], inmate Hamze filed no appeals of any kind regarding the allegations raised in his complaint."); see also Whatley v. Smith, 898 F.3d 1072,

---

[9] Hamze lists only "8th Amendment, Cruel & Unusual Punishment" in response to the complaint form's question about the federal constitutional or statutory rights that state officials allegedly violated. AC at 3. He fails to sufficiently identify other constitutional violations underlying his allegations in response to that question or elsewhere in the AC.

1083 (11th Cir. 2018) ("The district court permissibly weighed the evidence and credited the defendants' affidavits over Mr. Whatley's exhibits.").

Hamze's only relevant formal and appeal grievances involve the disciplinary report that he sought to overturn. Hamze labelled both grievances as disciplinary report appeals. Doc. 84-4 at 3, 6. In his formal grievance, Hamze alleged "errors in the process." Id. at 6. He asserted that Sergeant Nosbisch submitted a "false report" because he was not present during the incident; corrections staff did not obtain a witness statement from Sergeant Nosbisch, "other than the report itself"; corrections staff served him with the disciplinary report more than seventy-two hours after they wrote it; and the report did not accurately reflect the injuries that he sustained. Id. at 6–7. Notably, the institutional response reflects that prison officials did not consider Hamze's formal grievance to be a complaint about excessive force or another Eighth Amendment violation, but rather understood it to be a grievance challenging the disciplinary report and proceedings. See id. at 5 ("Disciplinary report #205-180180 has been reviewed. You have not presented any information that was not already considered or would change the decision made by the disciplinary hearing team."). In his appeal, Hamze again raised the above arguments, as well as alleged deficiencies with the service of the document. Id. at 3–4. In

22

short, the record establishes that Hamze grieved the disciplinary report and the process associated with that discipline, not a claim of deliberate indifference and/or excessive force. As such, the Court finds that these grievances did not suffice to alert officials to the issues in contention in Hamze's AC. See Berry v. Keith, No. 3:20-CV-261-MMH-JBT, 2021 WL 1561493, at *6 (M.D. Fla. Apr. 21, 2021) (finding plaintiff's grievances that challenged a disciplinary report arising from corrections officers' use of force did not properly exhaust his Eighth Amendment excessive force claims); Lawson v. Crutchfield, No. 5:15-CV-150-MP-GRJ, 2016 WL 5219466, at *7 (N.D. Fla. July 5, 2016) (same), report and recommendation adopted, No. 5:15-CV-00150-MP-GRJ, 2016 WL 5219626 (N.D. Fla. Sept. 21, 2016).

Despite this record, Hamze asserts that he submitted grievances about the incident at approximately five different institutions. See AC at 11 (five institutions); Doc. 161-2 at 3 (four institutions). He maintains staff intercepted and failed to log those grievances. See AC at 11; Doc. 161-2 at 3–4. However, no credible evidence supports his claim beyond his self-serving allegations.

Indeed, his allegations are belied by his statement in his initial Complaint,[10]

that he grieved the incident at the institutional and appellate level, and both

grievances were denied. Complaint at 10. In his Response, Hamze argues the

Court should not consider the initial Complaint because the AC supersedes it.

See Response at 1. And in accordance with Eleventh Circuit precedent, the

Court does not consider his claims and factual allegations in the initial

Complaint to be operative. See TVPX ARS, Inc. v. Genworth Life & Annuity

Ins. Co., 959 F.3d 1318, 1327 (11th Cir. 2020) (citation omitted). Nevertheless,

his competing representations about exhaustion in the Complaint, which

Hamze certified under Rule 11, certainly suggest that Hamze's current

statements under penalty of perjury may be less than credible.

Regardless, Hamze's grievance appeal log demonstrates that he has an

extensive history of submitting grievances. See Doc. 150-1 at 1–2 (showing that

Hamze submitted eight appeals in 2018, ten appeals in 2019, and fifteen

appeals in 2020). By itself, this is "evidence that the defendants did not make

administrative remedies unavailable to him or lose or destroy his grievances."

---

[10] By signing the initial Complaint, Hamze certified under Rule 11 that his "factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Complaint at 17.

24

Whatley, 898 F.3d at 1083. Moreover, as Hamze acknowledges in the Response, "the warden received [his] allegations of staff abuse [on the video recording] . . . and investigated them." Response at 4; see also Doc. 161-1 at 2 (Use of force incident report in which Warden Reddish notes the incident "[w]arrants further review by the inspector and use of force unit."). This undermines his claim that correctional staff, or specifically Warden Reddish, were attempting to prevent him from submitting grievances about the incident. While a lack of documentation would be consistent with Hamze's claim that correctional staff intercepted and destroyed these grievances, the Court may make a choice between two permissible views of the evidence. See Whatley, 898 F.3d at 1083.

Even assuming that staff at all five institutions failed to respond to or intercepted Hamze's grievances, "the grievance procedure provides that he could have 'proceed[ed] to the next step of the grievance process'" after the expiration of the time to respond to the informal or formal grievances. See Turner, 541 F.3d at 1084 (finding that "a prison's failure to respond to a formal grievance did not relieve the prisoner of his obligation to file an appeal when the grievance procedure provided that prisoners could file an appeal if they did not receive a response to a formal grievance within 30 days."); see also Pavao v. Sims, 679 F. App'x 819, 826 (11th Cir. 2017) (finding that "[b]ecause [the

plaintiff] could have proceeded by filing an administrative appeal, the PLRA still requires him to file an appeal notwithstanding the prison's lack of response."). Hamze did not do so.

Hamze's declaration of abuse to the OIG on a handheld videotape and the ensuing OIG investigation also fails to satisfy the exhaustion requirement. The FDOC provides an internal grievance procedure for its inmates, see Fla. Admin. Code R. 33-103.001 through 33-103.018, that provides specific sequential steps for proper exhaustion. The FDOC rules do not and did not include any provisions for video grievances. In addition, Hamze provides no evidence to suggest that the OIG's investigation resulted from Hamze submitting a grievance.[11] Therefore, the OIG's investigation is not relevant to the issue of exhaustion. See Fleming v. Espino, No. 3:20-cv-853-MMH-JRK, 2021 WL 5083743, at *7 (M.D. Fla. Nov. 2, 2021) (finding that plaintiff had failed to exhaust his remedies since "[t]here is no evidence supporting even an inference that the OIG's investigation was a result of Fleming filing a grievance"); see also Hersh v. Scott, No. 3:22-cv-408-BJD-LLL, 2023 WL 2242551, at *4 (M.D. Fla. Feb. 27, 2023) (finding OIG's investigation was "not

---

[11] Rather, it appears Warden Reddish referred the incident to the OIG on March 5, 2018. See Doc. 161-1 at 2.

relevant to the exhaustion analysis because there is no indication that investigation resulted from Plaintiff having filed a proper grievance"). To the extent he argues that the OIG investigation rendered pursuit of the grievance process futile, such an argument is contrary to Eleventh Circuit law. See, e.g., Varner v. Shepard, 11 F.4th 1252, 1264 (11th Cir. 2021) (recognizing the Eleventh Circuit has declined to create a futility exception to the PLRA in rejecting plaintiff's argument that his administrative remedies were exhausted because referral to an internal investigation unit had already occurred—the only relief that plaintiff could have received had he properly followed the Georgia Department of Corrections' administrative process). Therefore, the Motions are due to be granted based on Hamze's failure to exhaust his administrative remedies.[12]

Accordingly, it is now

**ORDERED:**

1.     Defendants Hall, Reddish, Singletary, and Burgin's Motions to Dismiss (Docs. 136, 150) are **GRANTED** to the extent Defendants seek

---

[12] Because the claims against the Defendants are due to be dismissed for failure to exhaust, the Court need not address their remaining arguments.

dismissal for Hamze's failure to exhaust his administrative remedies. In all other respects, the Motions are denied without prejudice.

2.    The Amended Complaint (Doc. 80) is **DISMISSED WITHOUT PREJUDICE**.

3.    The **Clerk** shall enter judgment dismissing this case without prejudice, terminate any pending motions, and close the case.

**DONE AND ORDERED** at Jacksonville, Florida, this 19th day of September, 2024.

**MARCIA MORALES HOWARD**
United States District Judge

Jax-9 8/12
c:    Abdelaziz Hamze, #L81379
       Counsel of record